UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JAMES H. BLANCHARD, JR., ET AL. | CIVIL ACTION NO. 5:09-CV-858 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| MARGARET CORNELIA AGURS TUCKER, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

The parties have submitted Motions for Partial Summary Judgment on the issue of damages.[1] [Record Documents 42 and 43]. The dispute stems from the Plaintiffs' purchase of land from the Defendants, where ultimately, the Plaintiffs only received a 13/16 interest in the oil and gas royalty. Thus, at the crux of the case lies the question of to what damages are the Plaintiffs entitled, if any, for the reversionary interest to a 3/16 oil and gas royalty. The damage issue is also impacted by the undisputed fact that even

---

[1] In the October 27, 2010 Status Conference in this matter, the parties informed the Court that a major issue preventing the parties from engaging in meaningful settlement negotiations is the parties' divergent views of the appropriate calculation of damages. The parties asked for permission from the Court to submit motions for partial summary judgment on the issue of damages. Despite the highly unusual procedure of asking a Court to decide damages before the issue of liability has been determined, this Court, pursuant to that request, allowed the parties to submit cross-motions on the issue of the proper calculation of damages assuming Plaintiffs succeed on their claims. These cross motions are the subject of that Order. However, the procedural posture of this case is problematic in that the ultimate damages determination cannot be made due to the sheer number of fact issues in dispute.

if the Plaintiffs were entitled to this interest, that interest was not due to them until May 1, 2006.[2]

The Plaintiffs have asserted three theories of liability. The first and most concrete of the theories targets the breach of warranty against eviction, pursuant to Louisiana Civil Code 2500, et seq. Under this claim, for the reasons that follow, the Court finds that the Plaintiffs have no entitlement to damages measured by the actual royalties that they would have received but for the eviction. Rather, under Louisiana Civil Code Articles 2506 and 2511, the damages on Plaintiffs' breach of warranty claim allow only a reduction in purchase price. In addition to the claim of breach of warranty against eviction, the Plaintiffs have loosely argued they are entitled to damages for failure to deliver, pursuant to Louisiana Civil Code 2475,[3] and the sale of a thing belonging to another, pursuant to Louisiana Civil Code Article 2452. Ultimately, the Court finds that it lacks crucial information necessary to a determination of damages on these causes of action.

## I. Factual Background

The Plaintiffs, James H. Blanchard,[4] Gary E. Patterson, and Melodye Tanner Patterson, brought this action against the Defendants to recover damages for an alleged

---

[2] The second half of the mineral interest was reserved by Defendants in the transfer deed until May 1, 2006. Defendants dispute the obligation to obtain from third parties the missing 3/16th interest.

[3] The Court notes that any claim for failure to deliver would be subject to a one-year prescriptive period. La. C.C. Arts. 2498 & 2534. This has been the subject of previous discussion and motions, but the Court ultimately held there were factual issues that precluded a finding. See Record Document 31.

[4] Mr. Blanchard has since deceased.

breach of the warranty against eviction, failure to deliver, and sale of the thing of another. On May 1, 1996, the Defendants conveyed to the Plaintiffs over 1,000 acres of property located in Caddo Parish (hereinafter the "Property") in a Cash Sale Deed, "with full guarantee of title." Record Document 15-13, p. 1. The relevant terms of the Cash Sale Deed are as follows:

> Vendors hereby declare that they grant, bargain, sell, convey and deliver unto vendees all right, title and interest they have in any tract or tracts of land located in Sections 14 and 15, Township 1 North, Range 16 West, Caddo Parish, Louisiana, subject only to the royalty reservation listed below, whether properly described herein or not.
>
> Vendors reserve unto themselves all of the oil and gas royalty in and under the aforesaid tracts until May 1, 2001. Commencing at 12:01 a.m. on May 1, 2001, vendors hereby transfer one-half (1/2) of the oil and gas royalty in and under the aforesaid land unto vendees, their heirs and/or assigns, in the same proportion vendees are purchasing the property. Commencing at 12:01 a.m. on May 1, 2006, vendors hereby transfer unto vendees, their heirs, and/or assigns, the remaining one-half (1/2) of all oil and gas royalty in and under the aforesaid property in the same proportions as vendees are purchasing the property.

Id. at p. 2. The sale of the Property was made in consideration of $375,000 cash from the Plaintiffs. On May 1, 2006, the Plaintiffs began receiving only 13/16ths of the total oil and gas royalty in the Property. After making a demand on the Defendants for 100% of the oil and gas royalty, the Plaintiffs learned that the "missing" 3/16ths of the oil and gas royalty in the property is owned by third-parties pursuant to three deeds dating from 1941 (hereinafter the "1941 Deeds").[5]

---

[5] Factual disputes also exist regarding whether the Plaintiffs knew or should have known of the 1941 Deeds before May 1, 2006. For purposes of the present motions, the Court assumes the Plaintiffs only discovered the interests represented by the 1941 Deeds after May 1, 2006.

The parties dispute whether, in the Cash Sale Deed, the Defendants sold only their interests in the Property or if Defendants sold in excess of their interests in the Property. For purposes of these motions, the Court must assume that the Plaintiffs' interpretation of the contract, that Defendants sold all of the oil and gas royalty in the Property, not just the oil and gas royalty owned by Defendants as of May 1, 1996, is correct.

## II. Law and Analysis

In their complaint, the Plaintiffs assert that they "are entitled to damages in the amount of the lost royalty production to date for the 3/16's of the royalty production that they have not received since May 1, 2006."[6] Both parties focus attention on the breach of warranty against eviction, found in Louisiana Civil Code Articles 2500, et seq. The Civil Code defines the scope of the warranty against eviction as follows:

> The seller warrants the buyer against eviction, which is the buyer's loss of, or danger of losing, the whole or part of the thing sold because of a third person's right that existed at the time of the sale. The warranty also covers encumbrances on the thing that were not declared at the time of the sale, with the exception of apparent servitudes and natural and legal nonapparent servitudes, which need not be declared.
>
> If the right of the third person is perfected only after the sale through the negligence of the buyer, though it arises from facts that took place before, the buyer has no claim in warranty.

---

[6] Plaintiffs argue in their present motion on the issue of damages that the proper measure is "the value of the undelivered mineral royalty interest, subject to the cap of [$375,000], the price paid under the Cash Sale Deed." Record Document 43-2, p. 10. If Plaintiffs' argument is that the damages equal the time-of-sale value of the purchased mineral royalty interest, then Plaintiffs argument would be consistent with Defendant's argument and the Court's ultimate conclusion. However, the Court interprets Plaintiffs' argument to be, in effect, that damages equal the May 1, 2006 value of the mineral royalty interest, which includes the post-sale increase, from May 1, 1996 to May 1, 2006, in the value of the 3/16ths oil and gas royalty.

La. C.C. Art. 2500. Louisiana Civil Code Articles 2506 and 2511 state the proper measure of damages for a breach of the warranty against eviction under Article 2500:

> A buyer who avails himself of the warranty against eviction may recover from the seller the price he paid, the value of any fruits he had to return to the third person who evicted him, and also other damages sustained because of the eviction with the exception of any increase in the value of the thing lost. La. Civ. Code Art. 2506.

> When the buyer is evicted from only a part of the thing sold, he may obtain rescission of the sale if he would not have bought the thing without that part. If the sale is not rescinded, the buyer is entitled to a diminution of the price in the proportion that the value of the part lost bears to the value of the whole at the time of the sale. La. Civ. Code Art. 2511.

Thus, the "price paid" by the buyer, in the case of either a complete or partial eviction, drives the damages calculation.[7]

The profit that a purchaser could have made had the eviction not occurred is not the type of damages to which Articles 2506 and 2511 refer. See, e.g., Lockwood Oil Co. v. Atkins, 104 So. 386 (La. 1925); Burrows v. Pierce, 6 La. Ann. 297 (La. 1851); Leon McQueen Lumber Co., Inc. v. Baer, 391 So. 2d 1198 (La. App. 1 Cir. 1980). Article 2506 expressly exempts the post-sale "increase in the value of the thing lost" from inclusion in the damages calculation. The basis for exclusion of profit is the principle that damages on a breach of the warranty against eviction claim "must be based on the value of the land at the time of its sale . . ., and not at the time of eviction." Crowell & Spencer Lumber Co., Ltd., 179 So. 21 (La. 1938). The price at the time of sale includes a present valuation of future expected revenues. Later-realized increases in these revenues constitute an

---

[7] The Plaintiffs seemingly concede they were not fully evicted from the property.

increase in the value of the thing lost, and under Article 2506 must be excluded. Thus, damages do not equal, as Plaintiffs argue, the profit lost or the "[May 1, 2006] value of the undelivered mineral royalty interest."[8]

Further, it must be noted that the thing sold by Defendants but unavailable due to the 1941 Deeds is not simply a "3/16ths oil and gas royalty." Rather, the thing sold by Defendants on May 1, 1996 was a reversionary interest to the 3/16ths oil and gas royalty reserved by Defendants, where the reserved oil and gas royalty had a term of ten years.[9] Therefore, assuming Plaintiffs' success on the breach of warranty against eviction claim, Plaintiffs are entitled to damages equal to the proportional value of this reversionary

---

[8] The Plaintiffs seemingly acknowledge the state of the law, but advocate for a different result: "The remedy set forth for an action for breach of warranty of title by La. Civ. Code. Ann. Art. 2506 is the price paid. This lends little in the way of guidance due to the fact that at the time of the sale, the mineral royalty interest was not valued separately from the Property. Moreover, the fact remains that Defendants did deliver part of the thing that they promised, and thus return of the entire purchase price is admittedly not a feasible remedy for numerous reasons. Plaintiffs submit that the correct measure of damages in this instance is the value of the undelivered mineral royalty interest, subject to a cap of [$375,000], the price paid under the Cash Sale Deed." Record Document 43-2, p. 10.

[9] When an individual sells land subject to a reservation of mineral rights, the individual creates a mineral servitude, lease, or royalty depending on the terms of the reservation. La. R.S. § 31:16. Mineral rights are real rights, La. R.S. § 31:16; see La. C.C. Art. 476, which operate as burdens on the property, La. C.C. Art. 478. With the transfer of the Property, Defendants necessarily transferred the reversionary interests in the outstanding 1941 Deeds and the reversionary interest to the oil and gas royalty reserved by Defendants. See La. R.S. §§ 31:76 & 31:104; Hicks v. Clark, 72 So. 2d 322 (1954). The rights to the oil and gas royalty reserved by Defendants, pursuant to the Cash Sale Deed, would revert to the landowners, naturally, at the end of the terms stated in the Cash Sale Deed. Similarly, the interests represented by the 1941 Deeds will revert back to the landowner of the Property upon their extinction due to prescription for non-use or due to confusion by unity of ownership by the landowner. See La. R.S. §§ 31:74; 31:76; 31:103; 31:104.

interest as a part of the whole of the thing sold at the time of sale.[9] For obvious reasons, the Court cannot specify a dollar value, but rather leaves that determination to the parties.

The two remaining theories of liability are more problematic insofar as a damages determination is concerned. As previously mentioned, the Plaintiffs have only loosely argued entitlement to damages for failure to deliver and the sale of the thing of another. With respect to the failure to deliver, the Civil Code provides that damages are available on this cause of action. See La. Civ. Code art. 2485; Nelson v. Holden, 52 So. 2d 240 (La. 1951) (holding that the purchaser was entitled to damages, as stipulated by the contract of sale, when seller refused to comply with her contractual obligation to transfer title to property to the purchaser). However, there remains outstanding the question of whether damages include lost royalty payments. More importantly, the parties debate what the Defendants "failed to deliver." The Defendants submit that all they were required to deliver was the land itself, which was done. The Plaintiffs, on the other hand, believe the Defendants had a duty to deliver 100% of the royalty interests. This distinction is crucial to any damages finding, and precludes a meaningful analysis by the Court. With respect to the theory of sale of a thing of another, the Plaintiffs fail to analyze or even effectively discuss the damages available under this Civil Code Article. The Court's dilemma is only increased by the fact that they neglected to provide the Court with any authority to make the damages calculations that are requested for these two causes of action. Rather, they simply cite the damages available for eviction, arguing that said damages are not

---

[9] Although the Plaintiffs could pursue rescission of the sale, they have shown no interest in this form of relief.

satisfactory under the facts of this case. And, in addition to that, they supply their own model for damages, which is not a true formulation of damages, but rather a conclusion that they are entitled to the lost royalty payments they would have obtained if they had the 3/16 royalty interest.

Despite the parties' wishes and this Court's best effort to provide guidance on the damages available, the issues presented to the Court are too unclear and in such a state of contention that the Court cannot meaningfully analyze the latter two theories of liability. In other words, the Court cannot speculate on what possible damages could be awarded, due to the number of variables presented by the parties' briefing: the variety of legal scenarios, the possibility that one of these claims is prescribed, and the number of disagreements the parties have as to the controlling law, the facts, and the legal import of the language in the Cash Sale Deed. This conclusion only serves to reinforce the necessity of determining liability before considering damages, as a damages finding is unquestionably affected by every significant fact in a case.

### III. Conclusion

For the foregoing reasons, assuming the Plaintiffs' success on their breach of warranty against eviction claim, the Plaintiffs' damages are limited to a diminution of the purchase price. With respect to the allegations of failure to deliver and sale of the thing of another, the Court will not make a damages determination because there are a host of factual and legal issues left to be resolved, and the state of the briefing fails to significantly shed light on a reliable method of making a damages calculation in light of the issues above.

Accordingly,

**IT IS ORDERED** that the Defendants' motion for partial summary judgment [Record Document 42] be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiffs' motion for partial summary judgment [Record Document 43] be and is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 28th day of September, 2012.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE